UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| TIM DELANEY[1] | ) | |
| | ) | |
| v. | ) | NO. 2:09-CV-269 |
| | ) | *Greer/Inman* |
| JOHNSON CITY, TENNESSEE POLICE | ) | |
| DEPT., CHIEF LOWERY, OFFICER | ) | |
| SCOTTIE CARRIER, OFFICER | ) | |
| GRYDER, OFFICER JASON | ) | |
| PATTERSON, OFFICER FRANK | ) | |
| PETERS, OFFICER DAVID SMITH, | ) | |
| OFFICER WILLIS; OFFICER    JOHN | ) | |
| DOE'S, ATTORNEY ALEX VANBUREN, | ) | |
| FAMILY NURSE PRACTITIONER TINA | ) | |
| KILLEBREW, APPALACHIAN | ) | |
| MEDICAL CENTER, *et al.* | ) | |

## **MEMORANDUM and ORDER**

*Pro se* plaintiff Timothy Delaney has filed this civil rights action for damages under 42 U.S.C. § 1983, alleging various violations of his constitutional rights. Defendants are the Johnson City, Tennessee Police Department, the Chief of Police, several police officers, an attorney, a nurse practitioner, and a medical center. Plaintiff's application to proceed *in forma pauperis* is **GRANTED**. [Doc. 1].

The complaint does not contain any facts in paragraph VI, which is the section of the pleading where claims are supposed to be asserted. Instead, for his statement of claims, plaintiff refers the Court to a patchwork of documents, identified as "Roman Numeral I and Roman Numeral

---

[1] Tashia Boykin, who was also was captioned as a plaintiff, signed the complaint, but failed either to submit an application to proceed *in forma pauperis* or to pay the filing fee. Therefore, she is not considered to be a party-plaintiff in this lawsuit.

II on page 6 of 11, . . . the modified version of the Complaint Form and the Complaint to the U.S. Department of Justice Coordination and Review Section- NYA Civil Rights Division attached at the end of complaint with new found evidence and medical records." Paragraph V, the section where a plaintiff sets forth his request for relief, does not contain a statement of what remedies plaintiff seeks, but again directs the Court to "[s]ee" the same documents. Among these documents are copies of newspaper articles, a flyer advertising a visit to Tri-Cities by Rev. Al Sharpton's representative from the National Action Network, three pages of DeLaney Family Sign-In Sheets , listing the names of witnesses to purported police brutality during a July 4, 2005 fireworks display in Johnson City, Tennessee, plaintiff's medical records, letters to and from plaintiff, plaintiff's arrest sheet, and other paperwork.

## I. Screening.

This pleading, though it must first be pieced together, must be screened, *see* 28 U.S.C. § 1915(e)(2), and must be dismissed if the Court determines that it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks damages against a defendant who is immune from such relief. In performing this task, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. Allegations in the Complaint.

The pleadings allege that, on July 4, 2005, several officers with the Johnson City Police Department arrived in plaintiff's neighborhood, where children were setting off fireworks and, apparently, neighbors had gathered. The officers began to disburse plaintiff's neighbors by pointing a shotgun at them and ordering them to go into their home. Thereafter, defendant officer Willis

2

ordered several children to get into his squad car, among them a young relative of plaintiff's. Defendant Willis, who attempted to grab plaintiff's young relative by her hair, punched plaintiff in the face with his fist multiple times, when plaintiff tried to reason with the officer. Other officers jumped on plaintiff.

Plaintiff's fiancee, Tasha Boykin, then reached out to grab Officer Willis, and he responded by striking her with his elbow, throwing her to the ground, drawing his gun and threatening plaintiff. Plaintiff was then shot twice with a taser gun, handcuffed, and beaten with the butt of a shotgun, flashlights, and fists. Ultimately, both plaintiff and his fiancee, who by this time had also been handcuffed and shot with a taser, were arrested (falsely, according to plaintiff) and charged with unsubstantiated crimes. Plaintiff served time in the county jail.

Plaintiff also asserts that, on June 25, 2008, he was subjected to racial profiling when he was stopped by the police, ostensibly for speeding (in an area with speed bumps), and subjected to excessive force by defendant officer David Smith. The above two incidents are alleged to be part and parcel of a pattern and practice of racial discrimination by the Johnson City Police Department, spanning some eighteen years (July of 1991 - November of 2009) (i.e., the date the complaint was filed).

### III. Law & Analysis.

Plaintiff and Ms. Boykin filed an earlier *pro se* civil rights suit, under section 1983, containing many of the exact same claims. *See Delaney, et al. v. Johnson City, Tenn.*, Civil Action No. 2:06-cv-137 (E.D. Tenn. 2008). The case was screened; three claims were dismissed; and seven claims survived the screening procedure. As to the surviving claims, however, plaintiffs were ordered to amend their complaint within ten days, to inform the Court as to the status of the criminal

3

proceedings brought against them, so that the Court could determine whether the doctrines in *Heck v. Humphrey*, 512 U.S. 477 (1994), or *Wallace v. Kato*, 549 U.S. 384 (2007), applied to the remaining claims.[2] (Civil Action No. 2:06-cv-137, Doc. 5, Order of December 12, 2007). Copies of the Order were mailed to plaintiffs at the last address they provided to the Court, but both Orders were returned, with the face of the envelopes marked, "UTF" (Unable to Forward). The Court dismissed the case for want of prosecution on January 22, 2008, (*id*., Docs. 8 & 9), and nothing was heard from either of them until plaintiff Delaney telephoned the Clerk's Office to update his address. (*Id*., Docket Entry of September 10, 2009). Copies of the Orders entered in his case were re-mailed to him that same date. (*Id*.).

In the instant complaint, filed on November 25, 2009, plaintiff disclaims that he has filed other lawsuits in this Court dealing with the same facts involved in the present action. (Compl. at 1-2). The Court is at a loss as to why he has made these affirmations involving his prior litigation history in his sworn pleading, given that he was sent copies of filings in the earlier action nearly eleven weeks before. At any rate, all but one, or possibly two, of the claims asserted in *this* suit (2:09-cv-269) were also presented in the previous suit (2:06-cv-137). In this category of claims are two dismissed in the earlier suit for failure to state a claim (i.e., conspiracy and failure-to-train claims). These two claims, having been decided in the earlier case, cannot be raised in this one, under the doctrine of collateral estoppel. *See Commissioner v. Sunnen*, 333 U.S. 591, 599 (1948) (explaining that collateral estoppel "is designed to prevent repetitious lawsuits over matters which

---

[2] *Heck* holds that a § 1983 claim for damages must be dismissed where a judgment in favor of a plaintiff would necessarily imply the invalidity of his state court conviction or sentence, unless the conviction or sentence has already been invalidated. *Wallace* carved out a *Heck* exception for a false arrest claim and any other claim related to rulings that will likely be made in a future criminal trial: such claims are to be stayed until the criminal case or the likelihood of a criminal case is ended.

have once been decided and which have remained substantially static, factually and legally"); *see also Olsen v. Mukasey* 541 F.3d 827, 831 (8th Cir. 2008) ("Olsen has also already litigated his equal protection claim. . . [and it] . . . is barred by collateral estoppel.") (citations omitted).

Other claims now offered in this lawsuit (i.e., claims of false arrest, false detention, false confinement, malicious abuse of process, assault, battery, and intentional infliction of emotional distress) were likewise asserted in the earlier lawsuit. Those claims, though not decided in the prior action, may not advance in this case either. This is so because allegations as to defendants' actions or failures to act on July 4, 2005, would be barred by the state's one-year statute of limitations which applies to § 1983 civil rights actions filed in Tennessee. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (holding that state limitations statute determines timeliness of § 1983 claims which arose in that state); *Porter v. Brown*, 289 Fed. Appx. 114, 116, 2008 WL 3838227, *2 (6th Cir. 2008) ("[O]ur precedent has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)."). As noted previously, the suit sub judice was filed on November 25, 2009, and only claims arising within the one-year period preceding that date are timely. The same thing holds true for plaintiff's allegations concerning his June 25, 2008, traffic stop, supposedly for speeding, but actually due to racial profiling because that alleged incident preceded the filing of the present complaint by more than one year.

These untimely claims are not saved by plaintiff's argument, broadly construed, that his medical records constitute new evidence, showing that he is not well and has been diagnosed with

5

"permanent and progressively damaging debilitating conditions in [his] spine and other body parts." [Doc. 2, Attachments 1 & 11].[3]

Tennessee has a savings statute which tolls the one-year limitations period for persons legally incapacitated (i.e., under the age of eighteen) or mentally incapacitated (of unsound mind) at the time the claim accrues. *See* Tenn. Code. Ann. § 8-1-106. Federal courts in Tennessee apply this statute to § 1983 cases, as an integral part of the state's limitations system. *Hardin v. Straub*, 490 U.S. 536, 537-38 (1989); *King v. Gillis*, 1996 WL 671385 (6th Cir. Nov. 19, 1996) (finding that Tennessee's savings statute is to be applied on remand of an inmate's § 1983 case to determine whether the suit was time-barred).

Even though the state's tolling statute applies, this does not help plaintiff because his purported disability falls within neither of the categories covered by the statute. Plaintiff does not allege that he was under eighteen at the time his cause of action accrued. Nor does he maintain that he suffered from mental infirmities which rendered him "incapable of attending to any business, or of taking care of h[im]self" or "unable either to manage his personal affairs or to understand his legal rights and liabilities." *Crawford v. Beatty*, 108 S.W.3d 877, 880 (Tenn. Ct. App. 2003) (defining unsound mind) (quoting *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001)).

Equally unavailing is plaintiff's contention that a conspiracy to discriminate against him, which began in 1991, continued up to the date he brought the instant complaint. The Court infers that plaintiff, by so contending, is attempting to invoke the "continuing violation" doctrine. Under a continuing-violation theory, the date a claim accrues can be extended by considering "as timely

---

[3] According to the medical reports, plaintiff suffers from Myofascial Pain Syndrome and Fibromyalgia, as well as other physical ailments.

all relevant violations 'including those that would otherwise be time[-]barred.'" *National Parks Conservation Ass'n. Inc. v. Tennessee Valley Authority*, 480 F.3d 410, 416 (6th Cir. 2007) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)).

Federal law determines when a § 1983 claim accrues, thus triggering the running of the statute of limitations. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). A claim accrues "when the plaintiff has a complete and present cause of action, that is, when "the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (all citations and internal quotation marks omitted).

It seems obvious that plaintiff had "a complete and present cause of action" in July of 2005, based on the fireworks fracas since he, in fact, raised such claims in his civil rights action brought within one year of that date and since the Court did not find those claims to be untimely. Thus, the claims arising out of the fireworks incident accrued on July 4, 2005, or thereabouts.

But even if the claims did not accrue on that date, the Court need not determine whether the civil conspiracy alleged here (as a pattern or practice of conduct on the part of local law enforcement officers to discriminate against plaintiff) is a "continuing violation" which extends that accrual date of his claims because plaintiff has not stated a conspiracy claim in the first place. A civil conspiracy, as explained by the Sixth Circuit, "is an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Here, plaintiff claims that a pattern of discriminatory harassment exists, but he has not provided any facts to show that there has been "a meeting of the minds" between two or more defendants as to one plan, *see Spadafore*, 330 F.3d 854, to violate plaintiff's constitutional rights.

7

Moreover, conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts are insufficient. *Id.*; *see also Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986) (holding that § 1983 complaint must contain factual basis for claims, skeletal allegations of unconstitutional conduct inadequate). Constructing a constitutional claim against a defendant in a civil rights case requires more than piling one allegation on top of another, as plaintiff has done.[4] *See e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 555-56 (2007) (" [T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). Plaintiff's assertion of the existence of a longstanding discriminatory conspiracy lacks merit, is conclusory, and fails to state a § 1983 claim for relief.

As to plaintiff's claims against Attorney Alex VanBuren, Family Nurse Practitioner Tina Killebrew, and the Appalachian Medical Center (if there are any claims remaining), plaintiff must show that each of them: 1) deprived him of a right secured by the Constitution and the laws of the United States 2) while acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). The second element is missing here.

The conduct of a private defendant is actionable under § 1983 only if the conduct can be fairly attributable to the state, *see Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir.1998); *Collyer v.*

---

[4] In addition to the fireworks and speeding encounters between plaintiff and the police which occurred in 2005 and 2008, other alleged acts of discriminatory harassment include police department intimidation of witnesses (i.e.the NAACP), who otherwise would have come to court and served as witnesses to the 2005 encounter and the construction of a police substation across from his house. There are also allegations that two officer defendants, as a part of the conspiracy, have taunted him or his family, driven by plaintiff's house in official and private vehicles, broken into his house (or having someone else do it), and hiding behind bushes and houses, keeping his house under surveillance, without a warrant (plaintiff has this on video). Plaintiff has not indicated when any of these things occurred.

*Darling*, 98 F.3d 211, 231-32 (6th Cir.1996), *cert. denied*, 520 U.S. 1267 (1997), and the conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state.

Here, there is no allegation whatsoever that defendants—an attorney engaged in the private practice of law, a nurse practitioner providing medical care (or a medical misdiagnosis, according to plaintiff), and a medical center, whose only wrongdoing, apparently, is that it employs said nurse practitioner —are state actors or that their challenged actions may be fairly attributed to the state. Thus, plaintiff's contentions against these defendants do not state a claim entitling him to relief under § 1983.

### IV. Conclusion.

Based on the above discussion, this complaint will be dismissed *sua sponte* for plaintiff's failure to state a claim. 28 U.S.C. § 1915(e)(2). And likewise based on the above discussion, the Court **FINDS** that any appeal taken in this matter would not be taken in good faith, 28 U.S.C. § 1915(a)(3); therefore, should plaintiff file a notice of appeal, he is **DENIED** leave to proceed on appeal *in forma pauperis*.

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE